## *MERCANTILE TRUST CO. ET AL. v. ETNA IRON WORKS, A. W. OSLER AND A. PLUEMER.

## MERCANTILE TRUST COMPANY v. A. W. OSLER ET AL.

1. Appointment of Principal Officer as Receiver with Extraordinary Powers.

   In an action under the provisions of sec. 5673, Rev. Stat., for the dissolution of a corporation organized for manufacturing purposes, brought in the court of common pleas of Hamilton county, Ohio, the petition in which case contained the necessary averments to bring the case within the terms of such section, and alleging that the principal place of business of such corporation was in Cincinnati, and praying also for the appointment by the court of a temporary receiver therefor, but not averring that such corporation was insolvent, or in imminent danger of insolvency, or setting out any other good or legal reason for such appointment, and on the filing of such petition, and the consent of the defendant corporation, the court at once appointed as such temporary receiver, one of the plaintiffs, who was one of the directors, and the principal officer of such corporation, with extraordinary powers as to the conduct of the business, and the contracting of debts which should have precedence and priority over all valid and existing liens on the personal and real property of the company, a motion made by a lien-holder, who by leave of court had become a party to such action after such appointment, to set aside such order as premature and not warranted by law, should have been granted, and it was error to refuse to do so.

2. No Receiver before Dissolution—Omitted Allegation not Supplied by Subsequent Pleading.

   No provision having been made by statute for the appointment of a receiver before dissolution, the court can appoint one only upon a case being made under sec. 5587 upon allegations of insolvency or other acts, to bring it within that section. If the allegation is omitted in the petition, the failure cannot be supplied by an amended answer, and the erroneous appointment of the receiver thus cured.

3. Question of Jurisdiction Determined as Other Issues of Fact.

   Where the question, whether the court in which such action is brought has jurisdiction of the subject-matter thereof, is raised by the pleadings in the case, it is to be tried and determined as any other issue of fact arising thereon. If the cause be one in which either of the parties is entitled to a trial by jury, either is entitled to such a trial of this issue, and if it be not such a cause, the issue must be tried by the court, as are the other issues; and such question can not be properly heard and determined on a motion filed to dismiss the action, on the ground that the court has not jurisdiction thereof, and it is not error to overrule such motion. But where on a motion filed to set aside an order appointing a temporary receiver, on the ground that the court has not jurisdiction of the action, it appears that such is the fact, such motion should be granted.

4. Holders of Specific Liens are Entitled to Become Parties.

   In such a proceeding, persons or corporations holding specific liens on the real estate or personal property of the defendant company, of which the dissolution was sought, and for which a temporary receiver was asked, were proper, if not necessary parties, and this, too, although the mortgage given to secure their claims, had been made to a trustee for the benefit of those holding the bonds secured thereby (which, however, did not appear in this case), which trustee was a party to such suit.

5. Order Dismissing Parties Reviewable on Error

   And an order of the court, made on the motion of the plaintiffs, dismissing such parties from the action, and rendering a judgment against them for costs, was erroneous.

6. Appointment of Receiver Reviewable on Error.

   And the judgment afterwards rendered in such action dissolving such corporation, and appointing a permanent receiver to wind up its affairs, was for this reason also erroneous and prejudicial to such parties so improperly dismissed, and those having like interests with them and excepting thereto.

---

* This case was dismissed by the supreme court for failure to file a printed record, October 11, 1892.

7. PETITION IN ERROR LIES TO ORDER REFUSING TO RESCIND APPOINTMENT.

Lienholders subsequently made parties may ask a rescision of the order appointing a temporary receiver, and where an order is made by a court refusing to grant such a motion this is an order, to reverse which a petition in error may be filed, before the final determination of the action. And an order sustaining a motion to dismiss such parties from the suit, and rendering judgment against them for costs, is a final order as to them.

8. MOTION FOR NEW TRIAL NOT NECESSARY TO REVIEW RULINGS ON ANOTHER MOTION.

And where in either of such cases a bill of exceptions is taken, containing all of the evidence upon which the court acted, the question as to the propriety of such ruling may be examined by the reviewing court, though no motion for a new trial was made and overruled, on the decision of such motions.

9. BUT MOTION IS NECESSARY TO REVERSE FINAL JUDGMENT.

But where it is sought to reverse the final judgment of the court rendered on the trial of the case, on the issues made by the pleadings therein, on the ground that such final judgment is against the weight of, or is not supported by the evidence, it seems to be necessary and essential that a motion for a new trial should have been made and overruled, as such action of the court is the error complained of; and that unless this is done, a bill of exceptions containing all of the evidence, can not be considered by the reviewing court, for the purpose of determining whether the verdict of the jury, on the finding of the court is against the evidence.

10. JURISDICTION OF LOWER COURT CONSIDERED.

Whether, on the facts appearing in this case, the court of common pleas of Hamilton county had jurisdiction of the action, discussed, and opinion expressed, but not authoritatively decided.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J

These cases were heard by us some weeks ago, and we afterwards announced the opinions we had formed on the questions presented; but the counsel for the defendants in error having expressed a desire for a further and fuller argument on some of the points, it was allowed, and after a careful consideration of the important and difficult questions involved, we re-state our views upon them.

In the first of the two cases it is sought to reverse an order or judgment of the court of common pleas refusing to set aside an interlocutory order made at the commencement of the suit, appointing a receiver for a corporation, the dissolution of which, and the winding up of its affairs, were asked for in such proceeding. And it seeks also the reversal of another order of the court made at the same time, dismissing certain parties who had become defendants therein, from the action. In the second case it is sought to reverse the final judgment rendered in the same action, dissolving such corporation and appointing the same receiver to settle up the affairs thereof. A brief statement of the history of the case is necessary to an understanding of the questions presented to us, and of the conclusions at which we have arrived.

On the 30th day of April, 1889, a petition was filed in the court of common pleas of this county by A. W. Osler and Adolph Pluemer, against the Etna Iron Company under the provisions of sec. 5673, Rev. Stat., asking for the dissolution of such corporation, and making all the averments necessary to bring it within the terms of such section, and alleging in addition thereto that the principal place of conducting the business of such corporation was in Cincinnati, Hamilton county, Ohio. At the same time, an answer of the defendant corporation was filed admitting all of the statements of the petition to be true, and joining in the prayer. Affidavits as to the truth of the facts stated in the petition were also filed by several of the directors and officers of the company, and therein the court was asked to appoint Mr. Pluemer, one of the plaintiffs (who was the president and general manager of the company), as the tem-

porary receiver thereof. Thereupon, on the same day, Mr. Pluemer was appointed as such receiver, with most extensive, and it would seem, extraordinary powers, for he was authorized to carry on the very large business of the company, to sell the personal property, borrow money, and incur liabilities which should even have precedence and priority over all the existing debts thereof, and he at once assumed the duties of such position.

Shortly thereafter, the Mercantile Trust Company, on its own application, was made a party defendant in the cause, and at once filed an answer averring that it held a mortgage upon all the property of the Etna Iron Works, to secure a debt then wholly due to it, and unpaid, of over $700,000; which mortgage, as appears from the evidence afterwards submitted, had been made to it as trustee, to secure bonds to that amount, held by different parties; and by way of defense to the action it alleged that the principal place of conducting the business of the Etna Iron Works, at the time of the filing of the petition, was not in Cincinnati, but was in Lawrence county, Ohio. About the same time several other persons and corporations were allowed to become parties defendant, and severally filed their answers. Some of them averred therein that they were simple creditors of the Etna Iron Works, and one of them, (The Slate Creek Iron Company), that it had a claim against it, for which it held as collateral the bonds thereof, secured by a mortgage upon its property. All of the answers averred that the court had no jurisdiction of the action for the reason before stated.

In addition to this, all such persons and corporations so made defendants, severally filed motions to vacate the order theretofore made by the court appointing the receiver. That of the Mercantile Trust Company asked that it be done on the ground that the person appointed was not a suitable one—that the order was prematurely made and without authority of law, and that the court had no jurisdiction of the action. The motions of the other defendants went further, and asked that the action itself be dismissed. After this the plaintiffs filed motions asking the court to vacate the orders allowing these defendants to become parties, for the reason that they were not proper parties. These several motions were heard by the court, evidence having been offered by way of affidavits on the question of jurisdiction so raised.

The motions of the defendants were overruled, but those of the plaintiffs as to all of the defendants except the Mercantile Trust Company were sustained, and an order entered, dismissing the others from the action, at their costs. To these rulings all of the said defendants excepted, but no motion for a new trial was made; a bill of exceptions, however, was signed by the court containing all of the evidence so offered.

It ought to be stated that neither in the original petition of the plaintiffs, or in the answer of the Etna Iron Works, was there any allegation whatever, that such corporation "was insolvent, or in imminent danger of insolvency, or had forfeited its corporate rights." Nor was there any such allegation in the affidavits filed with the petition. But after the filing of the motion of the Mercantile Trust Company on June 26, 1889, and after the filing of the like motions by the other defendants, the Etna Iron Works, on August 21, 1889, filed what it calls "an amended and supplemental answer and cross-petition," averring that it was insolvent. To reverse this judgment or order of the court, refusing to vacate the order appointing the receiver, and the judgment dismissing such defendants from the action, the plaintiffs in error filed the first petition in error, which was done during the pendency of the original action, and before the rendition of the final judgment therein.

The original case was finally decided November 11, 1889, and by the judgment of the court the corporation was dissolved and Mr. Pluemer again appointed as the receiver—there being nothing in the record to show that this was done by the consent of the parties, though no exception was then taken to this final judgment and no motion for a new trial was made and overruled,

but a bill of exceptions was allowed, which set forth all of the evidence submitted on the final hearing, which was substantially the same as that submitted on the hearing of the motion to vacate the order appointing the receiver.

We consider the cases, and the questions therein raised, in their order. It is objected by counsel for defendants in error that the first order complained of is not such an one as may be reviewed by proceedings in error, commenced before the final disposition of the case, and if it can, that the question of the jurisdiction of the court could not be settled on a motion filed, but must be heard and decided as other issues raised upon the pleadings.

We are of the opinion that in a case of this kind the court was not authorized to dispose in a summary way. of an issue thus made, and if found in favor of the defendants, to dismiss the action. The question of the jurisdiction of the court over the subject-matter of an action is an issuable fact. If it appears upon the face of the petition, that it has not, it may be raised by demurrer. If, as in this case, it does not so appear, the answer may affirmatively deny it, or traverse any allegation of the petition which alleges such jurisdiction. The answer filed by plaintiffs in error did both, and in such case we are not aware of any doctrine of the law, or practice of our courts, which would give the defendant the right on the filing of a motion, alleging the want of jurisdiction, and asking that the action be dismissed, to have a trial thereof by the judge, rather than by the jury, if the case is one at law, or on affidavits, taken *ex parte* it may be, rather than on oral or written evidence taken according to the forms of law. But we see no reason why the defendants were not at liberty, as soon as they became parties, to move for the vacation of an entry appointing a receiver, as having been prematurely entered, and without authority of law, and further to assign as a ground therefor that the court had no jurisdiction of the action itself. If this fact had been made to appear when the application was presented, it would certainly have been refused. What possible objection can there be, after the order is made, to seek by motion to vacate it, by showing that it was entered improvidently and when the court had no right to do it. The defendants were not bound either, (if the motion be decided against them), to wait for a final decision of the cause, by which time steps might have been taken by the receiver under the order made in the case, which would greatly prejudice their rights, but might legally and properly seek by proceedings in error to reverse the judgment of the court refusing to set aside the original order. We so held in the Duckworth case, which has been since affirmed in the supreme court, but not yet reported. But clearly it was an "order affecting a substantial right in a special proceeding," and thus comes within the very terms of sec. 6707, Rev. Stat.

The questions then, in the first case are, 1st, whether the Mercantile Trust Co. is in a position in which it can ask this court to review the first order of the court of common pleas on the weight of the evidence, and if so, 2nd, whether on that or any other ground the action of the court was erroneous. We understand both the practice and the law to be, that where a motion, (as distinguished from an issue arising on the pleadings), is submitted to a court on evidence, that to entitle the losing party to review the order made thereon, it is not necessary to file a motion for a new trial as a predicate for a bill of exceptions, but he may ask the judgment of the reviewing court whether the order made was against the weight of the evidence, when a bill of exceptions has been taken containing the whole thereof, (see the case of Beitman & Co. v. McKenzie, decided by the district court of this county, reported 12 B., 321); and on the evidence contained in the bill of exceptions, taken on the overruling of the motion of the plaintiff in error, we incline strongly to the opinion that it was shown thereby that at the time of the filing of the petition in the case, the principal place of conducting the business of the Etna Iron Works was not in Cincinnati, but was in Lawrence county, Ohio. That where the articles of incorporation, as required by the statute, fixed and designated a particular place in that county as

the principal place of conducting the business, which was that of manufacturing pig-iron, and the whole plant remains, and the business of manufacturing is carried on in the same place in which it was established, (all of which was conclusively shown here), that a mere change of the by-laws of the company, providing that the principal office shall thereafter be in another county, does not have the effect to change the location of this principal place of conducting the business of the corporation, even if the meetings of the directors and stockholders are thereafter held at such other place, and contracts be there made by the officers for the purchase of stock, or the sale of the manufactured products.

In the case of Pelton v. Transportation Co., 37 O. S., 450, it was held that "a certificate of incorporation, which under the statute specifies the place where the principal office of the company is to be located, is conclusive as to the location of such office," but that in such case, where the principal office had been located in a particular township, it might remove the same to any part of the same township, even to avoid municipal taxation, and the court in the decision of the case says: "For many purposes a corporation is regarded as having a residence,—a certain and fixed domicil. In this state where corporations are required to designate in their certificates of incorporation the place of the principal office, such office is the domicil or residence of the corporation. The principal office of a corporation which constitutes its residence or domicil, is not to be determined by the amount of business transacted here or there, but by the place designated in the certificate. True, several offices may be established at the place specified in the certificate, as it is sufficient under the statute to specify the 'county or place.' But where a single office is established in the county or township, or city or other place designated, no further inquiry as to the identity of the prinicpal office is admissible."

It is true that the question in that case arose under the taxing laws, but the court did not limit the language used to such cases. It is broad and general. And unless there are other statutes which bear upon this subject and give the right to corporations of this character to change their *situs*, the decision in the Pelton case, *supra*, would seem to apply to this, and a review of the statutes bearing on this point is necessary, to determine whether such power has been conferred.

The record in the case shows that the articles of incorporation of the Etna Iron Works were executed December 13, 1872. At that time the act of May 1, 1858, (S. and S., 301), was in force, and provided that the certificate of a manufacturing company, among other things, should specify "the name of the place where said manufacturing establishment, or any branch thereof having a place of doing business, shall be located." By the certificate then made, it was specified that the manufacturing establishments (of the Etna Iron Works) "shall be located and situated in the township of Elizabeth and the township of Upper, in the county of Lawrence, as aforesaid." There, it is conceded, that the principal office of the company was situate, at least until June 30, 1885, when by resolution of the stockholders of the company, the principal office thereof was to be located in Cincinnati, and the annual meeting of the stockholders was to be held there; and if that action was effective and legal, it has been there ever since—though the taxes on the personal property have been paid in Lawrence county and not at Cincinnati.

The law for the dissolution of corporations, sec. 5651 *et seq.*, Rev. Stat., provides for the filing of a petition for that purpose "in the court of common pleas of the county, or the superior court of the city or county, in which the principal place of conducting the business of the corporation is situate." At the time of the incorporation of the company, the statute of March 30, 1857, (S. & C., 310), was in force, and substantially is now sec. 3855, Rev. Stat. It provided "that every manufacturing company shall establish and keep at some place within the state and within the county, or within some one of the counties

in which its business shall be carried on, a principal accounting office" (under. sec. 3855, a principal office) "of such corporation, where shall be kept accurate accounts, exhibiting clearly the financial condition of such corporation, and its capital stock or shares, and of all property of every description and credits subject to taxation." These were to be open to the inspection of any proper assessor, and notice of the establishment of such office, and of any change thereof, was to be given as provided in such section. And if the "principal office" of this section is to be considered and held to be the same as that in which "the principal place of conducting the business of the corporation is situate," of sec. 5651, (that which gives jurisdiction), then it may be said that we see nowhere in the record any proof that the steps as to notice of a change thereof have been followed—and it appears also that the tax returns were not made from the office in Cincinnati, but from that in Lawrence county.

Counsel for defendants in error claim that the action of the corporation in 1885, changing the place of the principal office of the company from Lawrence county to Cincinnati was warranted, and cite sec. 3252, Rev. Stat., which provides "that a corporation by its regulations, when no other provision is made in this title, may provide for * * * the time, place and manner of calling and conducting its meetings, * * * the time of the annual election for trustees or directors, etc.," and this, with the statutes before cited, are all that we know of bearing on the question under consideration. We are of the opinion that the "principal office," of sec. 3855, and "the principal place of conducting the business of the corporation," of sec. 5651, are the same, and that it is probably so also as to the language used, in pursuance of the requirement of the statute, in the articles of incorporation of manufacturing companies, viz.: "the name of the place where the manufacturing establishment, or any branch thereof, having a place of doing business, shall be located." That the legislative intent was to fix the *situs* of all such manufacturing companies, and the place where the personal property thereof was to be returned for taxation, and where it might be sued, and the people of the state have knowledge of this. This is done as to other companies, by sec. 3236, whereby it is required that the certificate shall fix "the place where it is to be located, or where its principal business is to be transacted." The evident purpose of all these forms of expression is to point out the *situs* of the company, and unless some statute authorizes the change of this office, it must, for the purposes stated, be held to be that pointed out in the articles of incorporation, as held in the case of Pelton v. Transportation Co., 37 O. S., 450, 454.

Section 3855 is the only statute we have seen, which, in our opinion, authorizes such change in the case of a manufacturing company. Section 3232, even if it authorized it, (which it does not seem to do), applies only to corporations as to which no other provision is made in that title, which is done as to manufacturing companies by sec. 3855, and, as has been stated, we see no evidence in the record that notice of such change was given as therein required. Nor is it clear to us that under this section, the principal office of a manufacturing company can be changed from the place named in the articles of incorporation where its manufacturing establishment, or any branch thereof, shall be located, to a point other than one where the manufacturing is done. It could hardly have been the legislative intent, that this principal office could be located at any point in the state where the sale of an article so manufactured is effected, or any item of business is transacted, but that the language, "within one of the counties in which its business is carried on," refers to the place where its manufacturing is done—for this is the business which it was organized to carry on.

In conclusion then, on this point, while conceding that the question is one of doubt, we incline to the opinion that the proceeding was not commenced in the proper county, but in view of this doubt, as to the law, and of the manner in which the case comes before us, we prefer to dispose of the cases on another

point, without definitely determining this, as the question may again be presented to us in a different shape and upon different evidence. But before leaving this question of jurisdiction, we may say that in our judgment the second proceeding in error, which seeks the reversal of the final judgment on this same ground, does not properly present the question for adjudication; for the reason, that no motion for a new trial was filed, and consequently was not overruled. It would have to arise on the assignment of error that the judgment of the court was against the weight of evidence, and it seems to us that the result of the Ohio cases on this point (although there are some decisions which look the other way) is, that the only way that a bill of exceptions taken on the final judgment in a case, can become a part of the record, so as to be considered by the court to see if such judgment is contrary to the evidence, is by the filing of such motion and its being overruled by the court. In such case the error of the court, if any, is in the overruling of the motion for a new trial. And as this was not done here, we think the question does not properly arise on this second proceeding.

Second.—But leaving out of view the question of jurisdiction, we are of the opinion that on the pleadings and the affidavits in support thereof, no ground was shown for the appointment of the temporary receiver, which was the action then complained of. The case comes clearly within the terms of the decision of the Duckworth case. It will be noted that there is no provision in the chapter providing for the dissolution of corporations, for the appointment of a receiver before the dissolution thereof. Under it, this can only be done afterwards. It was necessary, therefore, if a receiver was desired before the corporation was dissolved, to make the proceeding an adversary one (instead of *ex parte*, as seems to be authorized by the chapter we are considering in the outset), and to make the Etna Iron Works a party, which was done, and by proper averments to bring the case within sec. 5587, Rev. Stat., which provides generally for the appointment of receivers, but there was a total failure to do this, there being no allegation in regard to insolvency as required thereby, or any fact stated which brought the case within the terms of the section. And the filing of the amended answer of the Etna Iron Works after the order was made and after the motion to vacate the order appointing a receiver, was filed, averring for the first time that the corporation was insolvent when the petition was filed, can not avail to supply the defect in the original pleading. We are of the opinion then that on the pleadings and the facts then shown or admitted, the court has no right to appoint a temporary receiver, and the motion filed by the Mercantile Trust Company should have been sustained by the court on this ground also.

We hold too, that there was error in the action of the court in sustaining the motion of the plaintiffs, and in dismissing the other defendants, or at least the Slate Creek Co., from the case. So far as they are concerned, it was a final judgment, and the action of the court was based solely on the pleadings, and is open to review. As has been said, the plaintiffs instituted this action as an adversary proceeding, making the Etna Iron Works a defendant, and if it was not strictly under the statute, there can be no question but that under sec. 5006, Rev. Stat., every person who had, or "claimed an interest in the controversy adverse to the plaintiff or was a necessary party to a complete determination or settlement of a question involved therein," was entitled to be a party; and even if it were strictly a statutory proceeding, (which it was not), we think the same general rules should govern. In this case two of these defendants had specific liens on the property, as was not denied. It can hardly be possible that our laws are to receive such a construction as to permit all of the property of a corporation to be disposed of in a case to which those having specific liens thereon, are not allowed to be made parties and contest such disposition. It seems to be against the whole policy of our laws, and the effect would be to deprive persons of their property without a day in court, and without due process of law. In this case the court refused to dismiss the Mercantile Trust Company, but did

dismiss the Slate Creek Mining Company, which we think stood on the same footing, and in doing so erred, and this error affected all of the subsequent proceedings, and we incline to the opinion that it was an error which also affected the Mercantile Trust Company, for if the Slate Creek Co. was a proper party, the former was entitled to have it remain in the case.

It was urged with much force in the argument on the rehearing, that the parties so dismissed were neither necessary or proper parties, and that the action of the court in so dismissing them was right.

It must be conceded that the cases cited on the re-argument, and which had not before been called to our attention, hold, that in proceedings by a trustee to foreclose a mortgage upon the property of a railroad company, executed to him to secure bonds issued by the company, those holding such bonds are not ordinarily necessary or even proper parties to the action, though they have a right to intervene, if the mortgagee acting for them "is not responsible, or is likely to prove unfaithful to his trust." Coe v. Railroad Co., 10 O. S., 372. But we do not concede that it is at all clear that the rule is the same in a case like the one at bar. This was not an action to enforce the mortgage. In its inception, the trustee of the bondholders was not made a party at all, and only became such on its own application. The petition sought, first, to place all of the property of the defendant, the Etna Iron Works, in the hands of a temporary receiver, but who by the action of the court was vested with extraordinary powers, the exercise of which might result in great injury to every creditor of the company, and to the contracting of debts and obligations which would take precedence of all existing mortgages and liens, and this without any allegation of the insolvency of the company or the imminent danger thereof, and secondly, to dissolve the corporation, and take the entire settlement of its affairs from the directors, and put them into the hands of another receiver, in which also every creditor was interested. It may be true that if the holders of the bonds thus secured were not made parties to such a proceeding, and the trustee was, they might be represented by him, and the proceeding not be held invalid by reason of their not being parties, but we have been unable to see any reason, under the broad provisions of our statute, why, having such an interest in the controversy, they are not proper parties.

Justice Swayne, in announcing the decision in the case in 92 U. S., 172, cited to us by counsel for the defendant in error, states the rule on this subject thus: "The general rule is, that in suits respecting trust property, brought either by, or against the trustees, the *cestuis que trust* as well as the trustees are necessary parties. Story's Equity Pleading, 207. To this rule there are several exceptions. One of them is, that when the suit is brought by the trustee to recover the trust property, or to reduce it to possession, and it in no wise affects his relations with his *cestuis que trust*, it is unnecessary to make the latter parties. Horsly v. Fansell, 11 Beav., 569, was a case of this kind. The objection taken here was taken there. The master of the rolls said: "If the object of the bill was to recover the funds with a view to its administration by the court, the parties interested must be represented. But it merely seeks to recover the trust moneys so as to enable the trustees hereafter to distribute them agreeably to the trusts declared. It is unnecessary therefore to bring before the court the parties beneficially interested." Was not the object of this proceeding to bring before the court the property of this company with a view to its administration, rather than one to recover property for the trustee, to be distributed by him agreeably to the trusts declared?

But however this may be, the Slate Creek Company was allowed by the court to become a party and to file an answer which showed that it had an interest in the property, the subject of the action, and which property it was sought to incumber and dispose of therein. It is to be noted too, that this answer, while containing the averment that the debt held by it against the Etna

Iron Works was secured by collateral, to-wit, bonds, secured by a mortgage on the property of the Etna Iron Works, it did not state that they were bonds covered by the mortgage executed to the Mercantile Trust Co. It is said by counsel in argument that such was the case, but there was nothing in the record to show it, at the time the order complained of was made. And even the Mercantile Trust Co., the trustee for bondholders, did not become a party until after an order had been made placing all the property of the Etna Iron Works in the hands of a receiver, and he a person ineligible to the position, except by the consent of all the parties—that is, we suppose, of the necessary parties, at least—(as was the Mercantile Trust Co.), to such an action. And that the Slate Creek Company, having been regularly made a defendant, and leave given it to file an answer, without any objection from the plaintiffs, and having filed such answer, showing a substantial interest in the subject under controversy, the court, in our judgment, erred in vacating the order making it a party, and in striking such answer from the files on the grounds alleged in the motion, and without any evidence, and in summarily dismissing it from the action, and adjudging costs against it—and that this is so, even if the claim of the counsel for the plaintiffs in error is not correct, viz.: that the statute providing for the dissolution of corporations, fairly construed, requires all creditors of corporations to be made parties to such proceeding. Section 5673, under which this proceeding was had, provides that on the filing of the petition the court must order the officers of the corporation to file the inventories, accounts and statements mentioned in sec. 5652, including the name and place of residence of each creditor, and that notice be given as pointed out in sec. 5654, that all persons interested in the corporation should show cause, if any they have, why it should not be dissolved, such showing to be made before a referee, as pointed out in the section. This, we understand, was done, and it would seem that practically at least, such creditors became parties to the proceeding, and were entitled not only to contest the matter before the referee, but to file pleadings in court denying the right of the plaintiffs to the relief sought, alleging as a ground therefor that the court had no jurisdiction of the action. But, in our view, it is not necessary, for the reasons before stated, and as this was not solely a proceeding under that statute, to pass authoritatively on this point.

But finding that there was error in the action of the court in refusing to vacate the order appointing the temporary receiver, and in dismissing the Slate Creek Company from the case, that order and judgment will be reversed; and such company, having become a party to the second petition in error, and joined in the prayer for the reversal of the final judgment, that judgment also will be reversed, and the case remanded to the court of common pleas for such further proceedings as may be warranted by law.

Hon. Wayne McVeigh and Ramsey, Maxwell & Ramsey, attorneys for the Mercantile Trust Co.

C. B. Matthews, A. B. Benedict and Bateman & Harper, for other creditors.

Johnson & Levy, Wm. H. Jones, H. S. Neal and Rankin D. Jones, for Etna Iron Works and other defendants in error.